553 A.2d 531

Stephen R. Trobovic, Appellant *v.* Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellee.

Submitted on briefs November 22, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*M. Emmons Stivers*, for appellant.

*Donald H. Poorman*, Assistant Counsel, with him, *Harold H. Cramer*, Assistant Chief Counsel, and *John L. Heaton*, Chief Counsel, for appellee.

OPINION BY SENIOR JUDGE BARBIERI, February 8, 1989:

Stephen R. Trobovic (Appellant) appeals an order of the Delaware County Court of Common Pleas dismissing his appeal from a one-year suspension of his operating privilege imposed by the Pennsylvania Department of Transportation (DOT) pursuant to Section 1547(b) of the Vehicle Code (Code), 75 Pa. C. S. §1547(b).[1]

At approximately 10:30 p.m. on May 10, 1987, Officer Steven Dintino of the Tredyffrin Township Police Department observed Appellant operating his vehicle at an excessive rate of speed and in an erratic manner. The officer observed that Appellant was traveling forty-seven

---

[1] This section provides in pertinent part as follows:

**(b) Suspension for refusal.**

(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

miles per hour in a posted thirty-five miles per hour zone and that at one point Appellant's vehicle travelled off the left side of the roadway for approximately 200 feet. The officer testified that at another intersection, Appellant drove his vehicle on the left half of the roadway for a couple hundred feet.

Officer Dintino stopped Appellant and requested his driver's license and registration. The officer noted that Appellant had an odor of alcohol on his breath, that his eyes were red, glassy and blood shot, and that his speech was slurred. Appellant fell against the driver's side of the vehicle upon exiting. Officer Dintino noted Appellant's balance to be extremely impaired and twice had to help support him in order to keep him from falling down.

After Appellant failed four field sobriety tests, Officer Dintino informed Appellant that he was under arrest for driving under the influence of alcohol. The officer advised Appellant of the implied consent law, asked him to submit to a blood test and informed him that if he refused to take the test his driver's license would be suspended for one year. Appellant refused to submit to the blood test. Three or four minutes later Officer Dintino once again asked Appellant to submit to a blood test and Appellant refused.

Appellant was transported to the Tredyffrin Township Police Department where he was videotaped. Counsel for Appellant attempted to submit this one and one half hour long videotape into evidence but the trial court refused to view it.

Making an offer of proof, Appellant's counsel stated that on the tape Appellant asked to take a breath test and was informed that he could not.[2] At that time, Officer Dintino asked Appellant whether he would submit to a

---

[2] Officer Dintino testified and the trial court found that Tredyffrin Township does not have breath testing equipment.

blood test. Appellant refused and *at this time* both parties agree there was no further warning given to Appellant that he would lose his license for one year for refusing to submit to the blood test. In light of the fact that neither party disputed the lack of warning at this time, the trial court determined it was not necessary to view the tape. It went on to find that Officer Dintino warned Appellant of a one-year suspension of his driver's license for refusal to submit to chemical testing, prior to transporting him to the police station.

Appellant testified that he was not warned at any time that he could lose his license for one year for refusing to submit to a blood test.[3] On appeal to this Court, Appellant contends that the trial court erred in refusing to view the videotape because it would support his contention that he was not warned that he would lose his license for one year for refusing to submit to a blood test.

Both parties agreed that Appellant was not warned of the one-year suspension while being videotaped at the police station. They only disagreed over whether or not he received the warning prior to being taken to the police station at the scene of his arrest. Therefore, in light of the trial court's finding, supported by substantial evidence,

---

[3] In order to establish a *prima facie* case in support of the suspension of a motor vehicle operator's license under Section 1547(b) of the Code, DOT must prove: (1) that the licensee was placed under arrest upon the charge of driving while intoxicated, and the arresting officer had reasonable grounds to believe the licensee was driving while intoxicated; (2) that the licensee was requested to submit to chemical testing; (3) that he refused to do so; and (4) where the issue is raised, DOT must also establish that it warned the licensee that his operating privileges would be suspended or revoked upon refusal to submit to a chemical test. *See Ostrander v. Department of Transportation, Bureau of Driver Licensing*, 116 Pa. Commonwealth Ct. 243, 541 A.2d 441 (1988).

The issue in this appeal pertains to the fourth criterion, namely whether Appellant received a warning pursuant to Section 1547(b) (4).

that Appellant was indeed warned of the consequences of a refusal prior to being videotaped, the videotape itself is irrelevant and Appellant was not prejudiced by the trial court's refusal to view it.[4]

While acknowledging that there is no case law to support his position, Appellant maintains that *each time* a request is made to submit to chemical testing the police officer must warn the licensee of the consequences of a refusal. Thus, Appellant argues that the officer's failure to warn him of the consequences of a refusal after requesting that he submit to a blood test while at the police station should result in a reversal of the suspension.

Section 1547(b)(4) of the Code provides that a police officer must inform licensees of the consequences of refusal upon requesting that they submit to chemical testing. As the trial court found, Officer Dintino provided Appellant with an appropriate warning after initially asking that he submit to a blood test. There is no requirement that the warning be given if the officer again asks the licensee to submit to chemical testing and we refuse to read any such requirement into the section. The arresting officer may, in his discretion, provide a licensee who has refused chemical testing with a subsequent opportunity to assent. However, he is not then required to provide another warning of the consequences of refusal.

Accordingly, we will affirm the order of the trial court.

---

[4] We believe Appellant would have suffered prejudice if he was seeking to offer the videotape as evidence of his sobriety in a criminal trial on the driving under the influence charge or even if he was contesting whether the officer had reasonable grounds to pull him over in the first place in connection with the appeal of the refusal suspension. However, as Appellant explicitly states in his brief at page 10, his "only argument pertains to the arresting officer's failure to satisfy Section 1547(b)(4) of the Vehicle Code ... and to warn [A]ppellant that his operating privilege would be suspended or revoked upon refusal to submit to chemical testing."

## ORDER

AND NOW, this 8th day of February, 1989, the order of the Delaware County Court of Common Pleas at No. 87-9229, dated February 22, 1988, denying the appeal of Stephen R. Trobovic from the suspension of his driver's license, is affirmed.