524 A.2d 1060

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellant *v.* James T. Belle, Appellee.

Submitted on briefs March 23, 1987, to Judges CRAIG and DOYLE, and Senior Judge NARICK, sitting as a panel of three.

*Harold H. Cramer,* Assistant Counsel, with him, *Spencer A. Manthorpe,* Chief Counsel, and *Henry G. Barr,* General Counsel, for appellant.

*Robert Davis Gleason,* for appellee.

OPINION BY SENIOR JUDGE NARICK, April 27, 1987:

Appellee, James T. Belle, had his privilege to operate a motor vehicle suspended for one year by the Pennsylvania Department of Transportation (Department), for refusing to submit to a breathalyzer test. The Court of Common Pleas of Cambria County (trial court) reinstated those privileges, whereupon the Department appealed.

At the outset, we note that a trial court's decision in a license suspension case cannot be disturbed on appeal unless its findings are not supported by substantial evidence, erroneous conclusions of law have been made, or the decision exhibits a manifest abuse of discretion. *Bruno v. Department of Transportation,* 54 Pa. Commonwealth Ct. 353, 422 A.2d 217 (1980). Because we have determined that the trial court's decision was founded upon an erroneous conclusion of law, we reverse.

The facts as found by the trial court are not in dispute. The arresting officer stopped appellee at about 3:00 a.m. on July 2, 1984. Suspecting that appellee was driving under the influence of alcohol, the officer requested, apparently several times, that appellee submit to a breathalyzer test. Appellee refused, having been warned that a refusal would result in a suspension of his operating privileges. Appellee told the officer that he had a heart condition, and was on medication. The officer ultimately drove appellee to his nearby residence. Following the officer's submission of his report indicating appellee's refusal to take the test, appellee was notified of the suspension of his operating privileges.

The trial court framed the issue before it as follows: whether a certifiable heart patient, on medication and under the care of a physician, has the right to contact his physician prior to submitting to a breathalyzer test. Although it recognized the burden it placed upon police officers both to make a diagnosis on the scene, and to notify such patients of their right to contact their physician prior to undergoing testing, the court determined that such a right should exist, as "[w]e pride ourselves on the individualistic approach when applying the law to citizens of our state and county."

Unfortunately, the trial court ignored both the clear language of Section 1547 of the Vehicle Code[1] and the previous decisions under that Section and its nearly-identical predecessor section.[2]

---

[1] Section 1547 of the Vehicle Code, *as amended,* 75 Pa. C.S. §1547.

[2] Section 624.1(a) of The Vehicle Code, Act of April 29, 1959, P.L. 58, *as amended,* added by Section 1 of the Act of July 28, 1961, P.L. 918 *formerly* 75 P.S. §624.1(a), repealed by the Act of June 17, 1976, P.L. 162, which provided, in pertinent part:

Any person who operates a motor vehicle or tractor in this Commonwealth shall be deemed to have given his consent

In relevant part, Section 1547 of the Vehicle Code, states:

> *Any person* who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood. . . .
>
> . . . .
>
> (1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

75 Pa. C.S. §1547 (emphasis added). This language is clear: any person who refuses chemical testing upon notice of the consequences shall lose his operating privilege. No exceptions are contemplated, nor have past attempts to create such exceptions been successful in our courts. *See, e.g., Department of Transportation, Bureau of Traffic Safety v. Wroblewski,* 65 Pa. Commonwealth Ct. 333, 442 A.2d 407 (1982); *Commonwealth v. End,* 6 Pa. Commonwealth Ct. 347, 295 A.2d 196 (1972) (no right to summon physician before sub-

---

to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood. . . . If any person is placed under arrest and charged with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing.

mitting to test); *Commonwealth v. Morris,* 218 Pa. Superior Ct. 347, 280 A.2d 658 (1971) (no right to consult with an attorney before submitting to test).

The rationale behind these decisions is simple. As the body rapidly eliminates alcohol, it is necessary to conduct chemical testing quickly, in order to get an accurate reading. Because consultation with either counsel or physicians will necessarily involve delay, this Court has held that there is no right to request such consultations prior to submitting to testing. *See, e.g., Herbert v. Commonwealth,* 75 Pa. Commonwealth Ct. 28, 460 A.2d 920 (1983); *Morris.*

In *End,* the appellant requested that his doctor be summoned before he was tested. Upon the arresting officer's refusal to do so, appellant refused to take a breathalyzer test. This Court dismissed appellant's contention that the failure of the arresting officer to advise appellant of his right to have his own physician conduct *additional* testing nullified the Department's power to suspend his license, stating:

> We hold that Section 624.1 of The Vehicle Code . . . empowers the [Department] to suspend the license of an operator who intelligently refuses to take the test, without regard for the reasons for such refusal. . . . ' "[I]t is sensible to construe the statute to mean that anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so. . . . The occasion is not one for debate, maneuver or negotiation, but rather for a simple 'yes' or 'no' to the officer's request." '

*End,* 6 Pa. Commonwealth Ct. at 351, 295 A.2d at 197, 198 (citation omitted).

*Giltinan v. Commonwealth,* 68 Pa. Commonwealth Ct. 96, 447 A.2d 1129 (1982) concerned the refusal to take a breathalyzer test by a driver who claimed he had

a heart condition. He was apprehensive and upset, and complained of chest pains. The police surgeon advised him that, if he felt so anxious, it might be medically advisable for him not to take the test. However, because he failed to prove that he was physically unable to take the test, or incapable of a conscious or knowing refusal, the trial court upheld the suspension. This Court affirmed on the trial court's opinion found at 22 Pa. D. & C. 3d 163 (1980).

This Court has held that once the Department has established that a driver has refused to take the test, the burden shifts to the driver to establish, by competent evidence, that he was physically unable to take the test, or incapable of a knowing and conscious refusal. *Department of Transportation v. Bailey*, 36 Pa. Commonwealth Ct. 643, 388 A.2d 1133 (1978). There is no question here that appellee refused to take the test, and the trial court so found. That court did not address the question of whether the appellee was physically unable to take the test, but it is apparent from the record that such is not the case. Appellee testified that he had a heart condition and was on medication. Further, he stated that he had had some unspecified tests done that day, and that he complained of chest pains to the arresting officer. The *Giltinan* court was unimpressed by similar facts, which did not lead to a conclusion of actual physical inability to submit to chemical testing. Therefore, because there was an intelligent refusal in the instant matter, and a lack of evidence regarding physical inability, we are constrained to follow the letter of the statute, and our previous holdings. We note that to do otherwise would place an unmanageable burden on police officers, and, as the trial court recognized in its opinion, "open[] the door to a great deal of abuse and fabrication." Our decision is consistent with the remedial purpose of the statute, and its safeguards against delay. *See Herbert; Morris.*

For the foregoing reasons, we reverse the decision of the trial court, and reinstate the suspension of appellee's operating privilege.

ORDER

AND NOW, this 27th day of April, 1987, the order of the Court of Common Pleas of Cambria County, dated February 25, 1985, is reversed, and the license suspension of James T. Belle is reinstated.