# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, : 
Department of Corrections : 
                     : 
          v. :   No. 186 C.D. 2014
                     : 
Tyrone Glenn, :   Submitted: June 27, 2014
                     : 
          Appellant : 


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE MARY HANNAH LEAVITT, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**          **FILED: August 27, 2014**


Tyrone Glenn, pro se, appeals from the Order of the Court of Common Pleas of Luzerne County (trial court), dated July 1, 2013, granting the Department of Corrections (Department) a preliminary injunction to involuntarily examine Glenn; to perform invasive diagnostic tests; and to administer medical treatment, including nutrition and hydration, when the Department's medical staff deems such treatment necessary to preserve Glenn's health and life. Glenn asserts that multiple procedural deficiencies occurred prior to and during the July 1, 2013 hearing held before the trial court pursuant to Rule 1531 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1531, on the Department's motion for preliminary

injunction; therefore, the preliminary injunction should be vacated. Discerning no error, we affirm.

Glenn is an inmate serving a life sentence at State Correctional Institution (SCI) Retreat. (Trial Ct. Op. at 2.) Glenn began a hunger strike on May 29, 2013. (Trial Ct. Op. at 2.) As a result, he was transferred from SCI-Retreat, which does not have an infirmary, to a psychiatric holding cell at SCI-Dallas, which does have an infirmary. (Trial Ct. Op. at 2.) Glenn informed prison officials that his hunger strike was an effort to make the Department: permanently transfer him to a single occupancy cell at SCI-Dallas; provide him with more food throughout the day; and to medically treat him for an array of self-diagnosed ailments. (Trial Ct. Op. at 2.) Between May 29, 2013 and June 27, 2013, Glenn had refused approximately eighty-seven meals. (Trial Ct. Op. at 2.) On June 27, 2013, the Department filed a complaint, motion for preliminary injunction, and an application for *ex parte* preliminary injunction to allow the Department to involuntarily administer medical treatment to Glenn, including nutrition and hydration. (Trial Ct. Op. at 2-3.) The trial court granted an *ex parte* preliminary injunction the same day and scheduled a hearing, pursuant to Rule 1531(d), Pa. R.C.P. No. 1531(d), for July 1, 2013. (Trial Ct. Op. at 2-3.)

During the July 1, 2013 hearing, Glenn asked the trial court whether an attorney would be appointed to represent him during the proceedings. (Hr'g Tr. at 4.) The trial court informed Glenn that he did not have a right to appointed representation because the matter was a civil case, not criminal. (Hr'g Tr. at 4-5.) Glenn responded that he understood that this was not a criminal proceeding and

further informed the trial court that he did not wish to retain legal representation. (Hr'g Tr. at 4-5.)  Glenn stated that he was "capable of handling the case" and requested that the trial court permit him to represent himself.  (Hr'g Tr. at 5.)  The trial court granted his request, and Glenn proceeded pro se.  (Hr'g Tr. at 5.)

After the hearing, the trial court granted the Department's motion for a preliminary injunction.  (Trial Ct. Op. at 2.)  Glenn did not demand a final hearing pursuant to Rule 1531(f)(1), Pa. R.C.P. No. 1531(f)(1).  Glenn filed a notice of appeal[1] of the trial court's Order on July 30, 2013 and a statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1925(b), on December 13, 2013.  (Trial Ct. Op. at 2.)  The trial court issued a 1925(a) opinion in support of the grant of the preliminary injunction on February 28, 2014.[2]

---

[1] Glenn filed the notice of appeal with the Superior Court, which then transferred this matter to this Court on February 7, 2014 pursuant to Section 762(a)(1)(ii) of the Judicial Code, 42 Pa. C.S. § 762(a)(1)(ii) (providing that the Commonwealth Court has exclusive jurisdiction of appeals from final orders of the trial court in all civil actions commenced by the Commonwealth).

[2] When reviewing an order granting a preliminary injunction, this Court must "determine whether or not reasonable grounds appear for the granting of the preliminary injunction," without deciding the merits of the case.  Hill v. Department of Corrections, 992 A.2d 933, 936 (Pa. Cmwlth. 2010).  "To sustain a preliminary injunction, the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted."  Id.  It is appropriate for this Court to "consider whether greater injury will occur from refusing the injunction than granting it and whether the injunction returns the parties to the status quo as it existed before the alleged wrongful conduct."  Id.

Glenn raises several arguments[3] on appeal: (1) the July 1, 2013 hearing was improperly conducted under Rule 1531 because Glenn's First Amendment rights were violated by the injunction; (2) the Department's attorney committed a fraud upon the trial court; and (3) Glenn, as an indigent inmate facing involuntary medical treatment, should have been provided counsel.

First, Glenn argues that the trial court did not properly adhere to Rule 1531 in conducting the hearing held on July 1, 2013. Rule 1531 reads, in pertinent part:

> (a) A court shall issue a preliminary or special injunction only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice. In determining whether a preliminary or special injunction should be granted and whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require.
>
> . . . .
>
> (c) Any party may move at any time to dissolve an injunction.
>
> (d) An injunction granted without notice to the defendant shall be deemed dissolved unless a hearing on the continuance of the injunction is held within five days after the granting of the injunction or within such other time as the parties may agree or as the court upon cause shown shall direct.

---

[3] Glenn neither challenges the Department's request for the preliminary injunction, nor does he challenge the factual basis upon which the trial court granted the preliminary injunction. Rather, Glenn's arguments focus on procedural deficiencies prior to and during the hearing on the Department's motion for a preliminary injunction. During the July 1, 2013 hearing, Glenn specifically stated that he was not challenging the Department's right to impose involuntary medical attention on him as a result of his hunger strike. (Hr'g Tr. at 6.)

4

(e) After a preliminary hearing, the court shall make an order dissolving, continuing or modifying the injunction.

(f)(1) When a preliminary or special injunction involving the freedom of expression is issued, either without notice or after notice and hearing, the court shall hold a final hearing within three days after demand by the defendant. A final order shall be filed in the office of the prothonotary within twenty-four hours after the close of the hearing. If the final hearing is not held within the three-day period, or if the final order is not filed within twenty-four hours after the close of the hearing, the injunction shall be deemed dissolved.

Pa. R.C.P. No. 1531. Glenn asserts that Rule 1531(f)(1) should have been applied instead of Rule 1531(d) because his hunger strike was a demonstrative protest protected by the First Amendment of the United States Constitution.[4]

This Court considered the issue of whether hunger strikes by inmates are constitutionally protected forms of speech in Hill v. Department of Corrections, 992 A.2d 933 (Pa. Cmwlth. 2010). Hill, an inmate serving a life sentence at SCI-Houtzdale, engaged in a hunger strike and refused several consecutive meals. Id. at 935. The Department filed a complaint, a motion for a preliminary injunction, and an application for an *ex parte* preliminary injunction to involuntarily administer medical care to Hill, including involuntary nutrition and hydration. Id. at 935. Hill argued that his hunger strike was not a suicide attempt, but a protest of his accommodations within the correctional facility and of the Department's refusal to transfer him to a different facility. Id. at 935-936. Hill asserted that the

---

[4] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

Department's injunction should have been dismissed because his hunger strike was a form of expression protected by the First Amendment. Id. at 938.

This Court rejected Hill's argument because "the curtailment of Hill's right to freedom of expression is justified when viewed against [the Department's] needs in maintaining an orderly prison facility and the health and safety of its prisoners." Id. We expressed agreement with the Supreme Court of New York, which, when analyzing a similar case, stated, "'[w]hereas a prisoner's right of expression may not be circumscribed to an extent greater than that required for the legitimate ends of prison security and administration, those legitimate interests clearly include the need to prevent a prisoner's suicide, even if cloaked in the guise of First Amendment expression.'" Id. at 939 (quoting Von Holden v. Chapman, 87 A.D.2d 66, 70-71 (N.Y. App. Div. 1982) (citations omitted)).

Here, if Glenn were to successfully starve himself to death, even though he claims that suicide is not his intent, the Department's legitimate goals of keeping its inmates in good health, maintaining order within the prison population, and protecting the morale of its medical staff would be severely undermined. Hill, 992 A.2d at 938; see also, Department of Public Welfare v. Kallinger, 580 A.2d 887, 891 (Pa. Cmwlth. 1990) (stating that "[i]t is clear that allowing a prisoner to starve to death while in state custody would have an unpredictable negative effect on the security and order within the prison system"). We see no reason to reach a different conclusion here. Therefore, the Department is not barred from administering involuntary nutrition and hydration by Glenn's constitutional right to free speech. Thus, it was not necessary for the trial court to apply Rule 1531(f)(1).

6

Moreover, even had Glenn's hunger strike been considered a constitutionally protected form of expression, Rule 1531(f)(1) still would not apply. Rule 1531(f)(1) explicitly states that "the court shall hold a final hearing within three days *after demand by the defendant*." Pa. R.C.P. No. 1531(f)(1) (emphasis added). Glenn did not demand a final hearing in accordance with this Rule; therefore, the trial court did not err in applying Rule 1531(d) instead of Rule 1531(f)(1).[5]

Next, Glenn argues that the Department's attorney committed fraud upon the trial court "by falsely creating a sense of urgency . . . to hold a final hearing because once the preliminary injunction was granted, [Department] agents began force feeding inmate Glenn and additionally he began to eat on his own." (Glenn's Br. at 24.) Glenn argues that, by urging the trial court to quickly proceed to a hearing, the Department's attorney deprived Glenn of a multitude of procedural rights and provided inaccurate facts to the trial court. Glenn argues further that because the medical staff at the correctional facility was able to successfully, albeit involuntarily on his part, administer nutrition and hydration, the hearing was unnecessary. However, Glenn's interpretation of the Rule is incorrect.

---

[5] Glenn also argues that the disregard of the correct procedural Rule denied Glenn his due process and equal protection rights under the Fourteenth Amendment of the United States Constitution, U.S. Const. amend. XIV, and Article I of the Pennsylvania Constitution, Pa. Const. art. I. However, for the same reasons that the Department is not barred from administering involuntary nutrition and hydration by Glenn's constitutional right to free speech and that the trial court did not err by applying Rule 1531(d), we conclude that Glenn's due process and equal protection arguments are not persuasive, which are based on the premise that the provisions of Rule 1531(f) should have been applied rather than Rule 1531(d).

Pursuant to Rule 1531(a), an *ex parte* preliminary injunction was issued in this matter without prior notice to Glenn. Rule 1531(d) states that, in such cases, a hearing must be held "within five days after the granting of the injunction or within such other time as the parties may agree or as the court upon cause shown shall direct." Pa. R.C.P. No. 1531(d). Here, a hearing was held four days after the *ex parte* preliminary injunction was granted, in accordance with the five-day time limit of Rule 1531(d). Moreover, Glenn admits that he was given notice of the hearing scheduled for July 1, 2013, and he neither made an attempt to reschedule the hearing pursuant to Rule 1531(d), nor avail himself of Rule 1531(c), which allows any party to move for dissolution of the injunction at any time. Pa. R.C.P. No. 1531(c). Accordingly, the hearing was held so quickly after the issuance of the *ex parte* preliminary injunction to comply with the requirement of Rule 1531(d) and in the absence of any action by Glenn. Therefore, the Department's attorney did not commit fraud upon the trial court.

Lastly, Glenn argues that as an indigent defendant facing involuntary, invasive medical procedures, the trial court should have assigned an attorney to him. The Department correctly notes that an individual does not have a right to an appointed attorney in a civil matter. See Johnson v. Desmond, 658 A.2d 375, 376 (Pa. Super. 1995); Weir v. Weir, 631 A.2d 650, 657 (Pa. Super. 1993); Kase v. Commonwealth, 489 A.2d 986, 987-988 (Pa. Cmwlth. 1985). Glenn argues that the injunction interferes with his freedom of expression, which is a substantial right; therefore, he should be appointed an attorney because courts may "appoint counsel in civil cases to indigent parties when deprivation of 'substantial rights' raises due process and equal protection concerns." (Glenn's Br. at 42-43.)

Although Glenn does not elaborate on what constitutes a substantial right we glean from his argument, as a whole, that he is referring to the right of free speech protected by the First Amendment. As we have already determined that an inmate's hunger strike is not a protected form of speech, this argument is not persuasive. Moreover, during the July 1, 2013 hearing, Glenn did not contend that he should be appointed an attorney because he was being deprived of a substantial right. Glenn understood that he was not entitled to have an attorney appointed to represent him and when given the opportunity by the trial court to retain counsel, Glenn informed the trial court that he was capable of handling the matter and formally requested permission to represent himself. (Hr'g Tr. at 4-5.)

For the foregoing reasons, the trial court's Order is affirmed.

_____
**RENÉE COHN JUBELIRER, Judge**

9

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Commonwealth of Pennsylvania, :
Department of Corrections :
 :
 :
 v. : No. 186 C.D. 2014
 :
Tyrone Glenn, :
 :
 Appellant :

**O R D E R**

  **NOW**, August 27, 2014, the Order of the Court of Common Pleas of Luzerne County entered in the above-captioned matter is **AFFIRMED**.

      _____
      **RENÉE COHN JUBELIRER, Judge**